*Ruggles, O. J.
 

 The' assignment in question 441 ] contained a clause by which it was mutually agreed between the¡ parties .• thereto, that .the ■ assignee should not be liable or accountable for any loss that might be sustained: by. the trust-property, or the proceeds thereof, unless the same'should happen by reason of • the gross negligence or wilful misfeasance of the assignee.
 

 It is difficult to conceive,. what motive led to the insertion,of this provision,in -the assignment,- unless it had, or was- supposed .to have, the- effect of qualifying the responsibility of the assignee, and of exempting him from accountability, in cases where he might otherwise, have been accountable. Nevertheless, if the clause ¡be a mere, nullity, • it ought. not to vitiate the assignment. The question;-therefore, is, whether a trustee for - the benefit of -the creditors of a failing debtor is responsible for any neglect or • -mismanagement of the trust not amounting to “gross negligence or wilful -misfeasance.”
 

 *Every man who-is -intrusted with the -pro-A* J .perty .of. another is bound to exercise,: in relation to its custody, management and disposition,-a certain degree of diligence, according to the nature and circumstances of the case. According to the elementary books, there are three degrees of diligence, for the exercise of which every bailee or trustee is responsible, in the
 
 *442
 
 discharge of his duty to the real owner or beneficiary of the property. These . three, degrees are denominated high or great diligence, common or ordinary diligence, and slight diligence. .High or great, diligence - is that with which prudent persons take care of their own concerns;- common or ordinary diligence is that which men, in general, exert with respect to their own concerns; and slight diligence-is that with, which persons of less than common prudence, or indeed of any prudence at all, take care of their own concerns. . (Story on Bailments, §§ 11-16.).
 

 Negligence is also divided into three corresponding degrees: gross negligence is the want of slight-diligence; ordinary negligence is the want of ordinary diligence; and slight -negligence is the want of high or great diligence. (Story on Bailments, ! 17.) These, .distinctions are sufficiently obvious to the mind in theory; but it must be admitted, that their practical application to particular cases is sometimes difficult. They appear, however,- to be well established and generally acknowledged; -and the clause in the assignment which gives rise to ■ the present controversy, seems to have been drawn with - reference to their existence and practical operation. The assignee is not exempted from accountability for- gross negligence, but is exonerated from the consequence of negligence in any inferior degree.
 

 The creditors of Mr. White -were the beneficiaries in the trust created by the assignment; they became the owners in equity of -the assigned property. They were entitled to the whole of it, - until their debt- should be satisfied; and to all the rights and remedies- which the law would have given them, if--they -had created the trust. A failing debtor,- by an- assignment, puts his property where" it -.cannot be reached by ordinary legal process; he puts it into *the hands of a trustee . of his own selection; often, his particular friend, *- sometimes, a man to whom the creditors would, not have
 
 *443
 
 been willing to confide such a trust. The debtor has an interest in the application of the trust-funds to the payment of his debts; but the creditors have usually a far greater interest therein; and that interest depends, in many cases, on the competency and diligence of the assignee. The debtor cannot be permitted, by creating a trust for his creditors, to place his property where it cannot be reached by ordinary legal remedy, and at the same time, exempt the trustee from his proper responsibility to his creditors.
 

 What degree of diligence, then, would the assignee have been bound to exercise in the business of his trust, if the clause in question had been omitted ? This question is answered by one elementary writer in these words: “A trustee is bound to manage the trust-property for the benefit of his
 
 cestui que trust,
 
 with the care and diligence of a provident owner” (Willis on Trustees 125); and by another, as follows: “A trustee is called upon to exert precisely the same care and solicitude in behalf of his
 
 cestui que trust,
 
 as he would do for himself, but greater measure than this a court of equity will not exact.” (Lewin on Trusts 152.) And in Story’s Equity it is said, that where a trustee has acted in good faith, in the exercise of a fair discretion, and in the same manner as he would ordinarily do in regard to his own property, he ought not to be held responsible for any losses accruing in the management • of the trust property. (§ 1272.) The first of these writers measures the liability of the trustee by the diligence of a provident owner; the two last mentioned, by the diligence of the trustee in his own concerns; but there is no substantial difference between them. The degree of diligence which a trustee uses in his own affairs cannot properly be the subject of judicial inquiry; every trustee must be presumed by the court before whom his account is taken, to use in his own concerns such diligence as is commonly used by all prudent men. (Jones on Bailments 30.) The diligence of a provident man, therefore, is the measure of a trustee’s duty. If it were otherwise, there would be one rule for a careless, and *a different rule for a vigilant trustee; and the .. ^ careless trustee would be exonerated in the same *- case in which the vigilant would be held liable. This was never intended, either by the elementary writers or by the authorities from which they deduce these conclusions.
 

 In § 1268 of Story’s Equity, it is suggested, that inasmuch as a trustee is not entitled to a compensation for his services, he would seem, upon analogous principles applicable to bailments, to be liable only like a gratuitous bailee, for gross negligence. But he adds, however, that it would be difficult to affirm that courts of equity do, in fact, always limit the responsibility of trustees, or measure their acts, by such a rule. In some of the English decisions, the liability of a trustee seems to have been determined upon the-analogy between a trust and a gratuitous bailment, but such a rule cannot be applicable to trustees within this state, because they are, in fact, entitled to compensation by way of commissions on moneys received, and paid
 
 (Meacham v. Sternes,
 
 9 Paige 403); and although the smallness of their compensation may be a good reason for judging them with indulgence and liberality, they cannot be placed on the footing of gratuitous bailees.
 

 But in the case under consideration, the assignment gives the trustee the right to retain the expenses of the trust and a reasonable compensation for his services in its execution; he stands, therefore, in regard to his obligation to exercise diligence, in the light of a paid agent for the parties interested, and not in that of a gratuitous bailee or trustee. Such an agent is liable for ordinary negligence, or the want of that degree of diligence which persons of common prudence are accustomed to
 
 *444
 
 use about their own business and affairs, (Story on Agency, § 183.)
 

 The debtor, therefore, has, in this assignment, exonerated, the trustee from-the duty-of exercising ordinary diligence in the execution of the trust; and the creditors, if they act under it and claim or accept dividends, are bound by its terms and conditions. In case of a loss in the collection of the assets, or in the keeping or the management of the trust-fund, for the want of- that degree of diligence, the loss must fall on them: A case *444 I *^kt happen, in which-a great portion of .the -* fund might be lost in this way; A failing debtor cannot be permitted to put- at hazard the trust-fund which justly belongs to his creditors, by authorizing the trustee to manage it without due prudence and caution.
 

 It was suggested • upon the argument, that the cove-
 
 [1]
 
 nant of the trustee to execute the trust to the best of his ability, bound him to exercise all the diligence required by his duty as trustee: But this-is qualified,-and,-we think, controlled, by that which- immediately follows, and exonerates him from liability. - Such doubtless was the meaning of the parties, and so the instrument is to be understood. The
 
 [1]
 
 judgment below ought- to be affirmed.
 

 Judgment affirmed.
 
 [1]
 

 [1]
 

 See Winn
 
 v.
 
 Crosby, 52 How. Pr. 174 ; Davis’s Estate, 5 Whart. 580 ; Swoyer’s Appeal, 5 Penn. St. 377